**UNITED STATES of America, Plaintiff,**

v.

**Shawn BAKER, Defendant.**

**No. 92 CR 166.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 2, 1994.

See also 808 F.Supp. 620.

L. Felipe Sanchez, U.S. Attys. Office, Chicago, IL, for plaintiff U.S.

Robert S. Bailey, Chicago, IL, for defendant Shawn Baker aka Four–Trey.

Shawn Baker, pro se.

---

*MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is the second motion of defendant Shawn Baker, to reduce, vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the court denies defendant's motion.

### I. *BACKGROUND*

On October 6, 1992, defendant entered a plea of guilty to one count of conspiracy to distribute narcotics, 21 U.S.C. § 846. Defendant entered his guilty plea pursuant to a Rule 11(e)(1)(C) plea agreement with the government under which Baker agreed to provide substantial assistance to the government and, in return, the government promised to move for a downward departure pursuant to Guideline Section 5K1.1 to an agreed sentence of incarceration of fifteen years. The court accepted the plea and entered a judgment of guilty. (Transcript dated October 6, 1992 ("Tr."), at 20–21.) On

June 2, 1993, defendant was sentenced to a term of fifteen years.

Defendant did not appeal his sentence. Instead, he filed his first section 2255 motion. The court denied defendant's motion, finding that his claims were not properly raised by a section 2255 petition. Defendant now brings his second section 2255 motion, arguing seven grounds of ineffective assistance of counsel.

### II. *DISCUSSION*

#### A. *Procedural Default*

■  The government argues that defendant's failure to raise on direct appeal the arguments he now makes bars his present motion. The Seventh Circuit, however, has made clear that a defendant may—indeed should—raise an ineffective assistance claim for the first time in a section 2255 motion. *United States v. Ellis,* 23 F.3d 1268, 1274 (7th Cir.1994); *United States v. Reiswitz,* 941 F.2d 488, 495 (7th Cir.1991); *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.1991). Defendant's motion is appropriately brought to this court now.

#### B. *Ineffective Assistance of Counsel*

■  Because counsel is presumed effective, a defendant bears a heavy burden in proving that his trial attorney rendered ineffective assistance of counsel. *United States v. Guerrero,* 938 F.2d 725, 727 (7th Cir.1991). A conviction will be reversed for ineffective assistance of counsel only if the defendant satisfies the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this test, a defendant must show " '(1) that the attorney's representation fell below an objective standard of reasonableness (performance prong), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong).' " *Dugan v. United States,* 18 F.3d 460 (7th Cir.1994) (citations omitted).

■  To succeed on the performance prong, the defendant " 'must identify the specific acts or omissions of counsel that formed

the basis for his claim of ineffective assistance.'" *Id.* (citation omitted). "'The court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."'" *Id.* (citations omitted). "The court's scrutiny of counsel's performance must be conducted with a high degree of deference and without the distorting effects of hindsight." *Id.* (citation omitted). A determination that counsel's performance was inadequate, however, does not warrant relief under section 2255 if there is little chance that the outcome would have been different had defense counsel performed adequately. *See id.; cf. Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Defendant argues that his trial counsel provided ineffective assistance because (1) he did not engage in sufficient pretrial investigation to enable him to challenge aspects of the sentencing determination; (2) he failed to challenge the government's 22 kilogram drug distribution calculation or insist upon a precise calculation of the amount of drugs for which defendant should have been held responsible; (3) he mislead defendant as to the effect of defendant's two-point acceptance of responsibility reduction; (4) he lead defendant to believe that his case would be decided under pre-Guideline law when, in fact, it was a Guideline case; (5) he ineffectively negotiated Baker's plea agreement and then coerced Baker to enter his plea to cover the

time frame of 1986 through the fall of 1987;[1] and (6) he falsely informed Baker that the only information in Baker's file was an indictment and refused to discuss the case with Baker. The court will address each of these allegations.

Initially, Baker offers several arguments pertaining to his role in the conspiracy. Baker alleges that his trial counsel did not engage in sufficient pretrial investigation, that such investigation would have revealed that Baker "could not have been responsible for the amount of drugs in the plea agreement" (Motion Under 28 U.S.C. § 2255, at 5), and that counsel improperly failed to challenge the government's 22 kilogram calculation of the amount of heroin the conspiracy sold during Baker's tenure in the organization.

The only evidence defendant has offered to support his claim that he was not responsible for the amount of heroin forming the basis of his plea is his unsubstantiated allegation—an allegation that contradicts his earlier sworn statements. In his plea agreement, Baker admitted that during the time of his involvement in the Sims organization, the conspiracy distributed at least 22 kilograms of heroin and multiple kilograms of cocaine.[2] In addition, at his Rule 11 hearing, defendant expressly acknowledged the accuracy of these facts. (Tr. at 16–20.) Baker repeatedly replied under oath that he knew the organization ran numerous drug distribution outlets and acknowledged that the organization in fact distributed 22 kilograms of heroin during Baker's membership in it.[3]

---

1. Baker actually separates this contention into two grounds of ineffective assistance, but those grounds can be dealt with as one ground.

2. In his plea agreement, Baker admitted to the following involvement in the organization:

   It was further a part of the conspiracy that at various times from in or about 1986 and continuing until in or about Fall of 1987, defendant SHAWN BAKER participated in the conspiracy by working along with other co-conspirators at one or another of the various narcotics distribution locations possessing and selling large quantities of small packages of mixtures containing heroin and cocaine to customers of the narcotics enterprise. Throughout the time defendant SHAWN BAKER took part in the conspiracy, the organization pos-

sessed with intent to distribute and distributed multiple kilograms of cocaine and at least 22 kilograms of heroin.

*United States v. Shawn Baker,* 92 CR 166, Plea Agreement, at 4, ¶ 5(a).

3. The government calculated the drug quantity for which Baker was held responsible from the drug records maintained by the Sims organization. These records showed that the organization distributed 22 kilograms of heroin and multiple kilograms of cocaine during Baker's admitted tenure with the organization. It is incongruous that Baker seeks to challenge the court's determination as to Baker's responsibility, given the extreme leniency of its calculation. Indeed, the sentencing calculation accounts only for heroin sales and does not increase the drug quantity at all for the organization's cocaine sales.

■ "The representations of defendant constitute a 'formidable barrier' to collateral relief and carry a strong presumption of truth." *Van Russell v. United States*, 976 F.2d 323, 327 (7th Cir.1992) (citations omitted). "A judge is entitled to hold a defendant to statements made in open court and need not give him a hearing so that he may more readily contradict himself." *United States v. Roth*, 860 F.2d 1382, 1387 (7th Cir.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989). "Rational conduct requires that voluntary responses made by a defendant under oath before an examining judge be binding. Such a requirement is consistent with reason and common sense." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). Consequently, defendant's attempt at this date to contradict his earlier sworn statements by unsubstantiated allegations must fail. *See United States v. Price*, 988 F.2d 712, 717 (7th Cir.1993) ("Voluntary responses made by a defendant when entering a guilty plea are binding.").

■ Moreover, an attorney is not ineffective merely because he fails to object to the quantity of controlled substance used for calculating a defendant's sentence if there is no factual basis upon which counsel could have relied in mounting a challenge and no reasonable probability the challenge would produce a more favorable result. *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1505, 117 L.Ed.2d 643 (1992). Because the government had a solid basis for its drug calculation and defendant has offered no evidence showing that he was not responsible for the amount of drugs reported in the plea agreement, defense counsel was not deficient in failing to challenge the government's proof.

■ Along the same lines, defendant argues that a further investigation by his attorney would have established that he did not join the conspiracy until the end of 1986, and not the beginning of 1986, as was indicated in his plea agreement. This allegation, however, is mere speculation. Defendant has not recounted what evidence his counsel would have uncovered if he indeed had investigated the matter further. *Cf. United States v. Muehlbauer*, 892 F.2d 664, 669 (7th Cir.1990) (Defendant's section 2255 claim that testimony of two witnesses would have established his innocence without merit because defendant did not indicate what the testimony of the witnesses would have been.). Furthermore, defendant stated under oath that he was responsible for acts of the conspiracy which took place during 1986. (Tr. at 17.)

Moreover, even assuming that defendant did not join the conspiracy until the end of 1986—quite an assumption given that this is the first time defendant has offered this account of the facts—he likely would have suffered no prejudice from the government's error in calculation. Defendant's sentence under the Sentencing Guidelines would have been the same, even using defendant's new version of his involvement in the conspiracy. Applying a twelve-month term to the figures extracted from the Sims organization drug records (sales of 22 kilograms of heroin over 23 months), defendant could have been held responsible for approximately 11.5 kilograms of heroin for his membership in the conspiracy for twelve months.[4] Guideline Section 2D1.1(c)(4) provides that a defendant shall receive an offense level 36 for a quantity of heroin ranging from 10–30 kilograms. Moreover, this figure, like the figure the court actually relied on in sentencing defendant, does not take into account the cocaine sold by the organization.

■ Next, Baker argues that counsel gave him misleading information regarding his two-point reduction for acceptance of responsibility.[5] According to Baker, he believed

---

4. A rough calculation, no doubt, but this analysis is for hypothetical purposes only, given that Baker's claim has already been rejected. Furthermore, this analysis does not even consider the absence of prejudice based on the downward departure from the Guidelines and the finding that defendant was a career offender. These two points make clear that the calculation of defen-

dant's initial offense level was not critical to his ultimate sentence.

5. Defendant's counsel submitted an affidavit to the court stating that he "never told Mr. Baker that the acceptance of responsibility reduction would come after [the fifteen year sentence calculation]" and that he "believe[d] Mr. Baker understood that the final sentence he would re-

that the two points would be deducted from the fifteen-year sentence actually imposed. This argument is without merit. "Misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing along, does not constitute ineffective assistance of counsel." *Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994). Moreover, defendant was aware, before entering his plea, that he would receive a fifteen-year sentence—not a sentence of fifteen years minus two points. In his plea agreement, which defendant admitted under oath that he had read and discussed with his counsel,[6] defendant entered a Rule 11(e)(1)(C) plea not to a particular Guideline range but rather to a term of fifteen years. Therefore, defendant's argument is nonsensical, as there is no way to deduct two points from fifteen years. Indeed, at his Rule 11 hearing, defendant acknowledged his understanding that he would receive a sentence of fifteen years.[7] Given the information defendant possessed from the plea agreement and from the court at his Rule 11 hearing, defendant's reliance on any misinformation from his counsel was unreasonable. *See Barker,* 7 F.3d at 634–35 (Reliance on alleged misrepresentations by defense counsel was unreasonable in light of court's explanations at plea hearing.).

■ Baker's next claim is that his counsel was ineffective because he lead Baker to believe that he would be sentenced under pre-Guideline law but Baker was, in fact, sentenced under the Guidelines. Initially, it must be noted that this claim, like most of those presented by defendant, is refuted by the record. Counsel stated at the Rule 11 hearing that the parties had agreed the Guidelines would apply to his conduct. (Tr. at 2; *see also* Government's Response ex. B, ¶ 5, *cf.* Plea Agreement at 5, ¶ 6.) This agreement was clearly part of the proceedings from the guilty plea onward. Baker simply could not reasonably have been confused on this point.

■ Nevertheless, even if defendant was under the mistaken belief that the Guidelines did not apply to his offense, he suffered no prejudice from counsel's misleading information. First, as noted above, misinformation in and of itself does not establish ineffective assistance. Second, the Seventh Circuit has repeatedly held that the Guidelines are applicable "'to crimes referred to as "straddle offenses" that began before the effective date of the Guidelines and continued afterward.'" *Price,* 988 F.2d at 723 (quoting *United States v. Lowry,* 971 F.2d 55, 66 (7th Cir.1992)). "'[W]here a conspiracy began prior to the effective date of a conspiracy but continued beyond it, the Guidelines apply.'" *Id.* (quoting *United States v. Bafia,* 949 F.2d 1465, 1477 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992)).

Baker has offered no evidence that he withdrew from the conspiracy prior to the effective date of the Guidelines (November 1,

---

ceive would be 15 years." (Government's Response ex. B.)

**6.** The following exchange took place between the court and defendant at his Rule 11 hearing:

THE COURT: The record should reflect that I have been tendered a written plea agreement in this matter.

BY THE COURT:

Q. Mr. Baker, have any other agreements or promises been made to you that are not contained in writing in this plea agreement?

A. No, sir.

Q. Is this your signature on page 11 of the plea agreement, above that of Mr. Bailey?

A. Yes, sir.

Q. Did you read this document before you signed it?

A. Yes, sir.

Q. Did you discuss the plea agreement with Mr. Bailey?

A. Yes, sir.
(Tr. at 9.)

**7.** At defendant's Rule 11 hearing, he was asked the following question and gave the following answer:

Q. Do you understand that under paragraph 15 of the plea agreement, at the time of sentencing, assuming that you continue to cooperate and provide complete and truthful assistance to the government, the government will move the Court for downward departure pursuant to Section 5(k)1.1 of the Guidelines and Rule 35(b) of the Federal Rules of Criminal Procedure. And that the parties have agreed, as part of this sentence, that the Court shall sentence you to a term of incarceration of 15 years. Do you understand that?

A. Yes, sir.
(Tr. at 12.)

1987), and thus the court's determination that the Guidelines apply to his conduct is not truly challenged. Baker admitted being part of the conspiracy "until in or about Fall of 1987." (*See* Plea Agreement at 2, 4.) Even if Baker did not commit an act in furtherance of the conspiracy after the effective date of the Guidelines, "he is still liable for the acts of his co-conspirators," unless he took affirmative steps to withdraw from the conspiracy. *See Price*, 988 F.2d at 723. " 'Withdrawal requires an affirmative act to either defeat or disavow the purposes of the conspiracy, such as making a full confession to the authorities or communicating to co-conspirators that [he] has abandoned the enterprise.' " *Id.* (citation omitted). " '[A] conspirator will not be permitted by the law to limit his responsibility for its consequences by ceasing, however definitely, to participate.... [M]ere cessation of activity is not enough ...' " *Id.* (citations omitted). Moreover, the burden of proving withdrawal lies with the defendant. *United States v. Patel*, 879 F.2d 292, 294 (7th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990). Baker has offered no evidence that he withdrew from the conspiracy prior to November 1, 1987. Because the conspiracy itself straddled the effective date of the Guidelines (continuing until 1990), Baker again was properly sentenced under the Guidelines.[8]

■ Defendant next alleges that his plea was not an intelligent and voluntary one because his attorney misled him as to his potential exposure under the conspiracy. Defendant argues that he only pleaded guilty because his attorney told him that if he did not plead guilty to the conspiracy as set out in the plea agreement, he could be held liable for the overall conspiracy. The court cannot understand how defendant was prejudiced by this information, given that it is an accurate

recitation of the law. *See, e.g., Price*, 988 F.2d at 721 ("We 'have held defendants liable for the entire quantity of drugs involved in a drug conspiracy ... [when] the defendants were substantially involved in the conspiracy and knew or reasonably should have known of the quantity of drugs handled by the conspiracy.' ") (quoting *United States v. Edwards*, 945 F.2d 1387, 1394 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992)).

■ Finally, defendant alleges that his attorney did not provide defendant adequate representation because counsel failed to give defendant copies of the written pleadings in this case, failed to meet with the defendant about the case, and falsely informed defendant as to the amount of information in his files.[9] At his Rule 11 hearing, however, defendant stated under oath that he had an adequate opportunity to discuss his plea with his attorney, that he was satisfied with the efforts and advice of his attorney, that he read the indictment in his case, that he discussed the charges against him with his attorney, and that he fully understood those charges. (Tr. at 5–6.) Nevertheless, even assuming the accuracy of defendant's present allegations, they provide no basis for relief because defendant has failed to show how these alleged delinquencies on the part of his counsel prejudiced him.

## III. CONCLUSION

Defendant's second Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 is denied with prejudice.

---

8. Ironically, Baker could have received a longer sentence had the court not applied the Guidelines to his case. Under pre-Guideline law, the court could have imposed a sentence of up to life in prison.

9. Counsel for defendant directly refutes these allegations in an affidavit filed with the court:

I thoroughly discussed with Mr. Baker the contents of all materials I reviewed in this case, including the indictment, the filed pleadings and the discovery materials. In this regard, we discussed the possible resolution of this case from the perspective of trial or guilty plea. The decision to plead guilty and agree to the terms and contents of the plea agreement was exclusively Mr. Baker's.

(Government's Response ex. B, ¶ 4.)